# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4405 | **DATE** | 12/15/2003 |
| **CASE TITLE** | Graham v. Niles, et. al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants' Motion for Summary Judgment (doc. # 19); Defendants' Motion to Strike (doc. # 37)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial [set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] . Enter Memorandum Opinion and Order. For the attached reasons, Defendants' motion to strike (doc. #37) is granted in part and denied in part. Defendants' motion for summary judgment (doc. # 19) is GRANTED in favor of all Defendants on Count I and II, which are dismissed with prejudice. Counts III-VII are dismissed without prejudice, for lack of jurisdiction. All other pending motions denied as moot.

(11) ■ [For further detail see order on the reverse side of the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | DEC 16 2003 date docketed | |
| ✓ | Docketing to mail notices. | | | 42 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | DEC 16 2003 date mailed notice | |
| JHC | courtroom deputy's initials | 03 DEC 15 AM 4:13 Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

RODGER GRAHAM, )
)
    Plaintiff, )
)
)
v. ) Case No. 02 C 4405
)
) The Honorable William J. Hibbler
VILLAGE OF NILES, OFFICER LISA NALLEN, )
AND OFFICER TOM FRAGASSI, )
)
    Defendants. )

## MEMORANDUM OPINION AND ORDER

Rodger Graham asserts that Officers Lisa Nallen and Thomas J. Fragassi deprived him of his rights under the Fourth and Fourteenth Amendments in violation of 42 U.S.C. § 1983. Graham alleges that Officers Nallen and Fragassi, acting upon an anonymous tip that Graham was surreptiously videotaping women's breasts, unlawfully searched him and arrested him without probable cause in the parking lot of a Target Store in the Village of Niles, Illinois. Graham also asserts various state law claims related to the search and arrest against both officers and the Village of Niles. The Defendants move for summary judgment, arguing that they are entitled to qualified immunity for their actions.

### I. Standard of Review

Summary judgment is proper only when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed R. Civ. P. 56(c). A genuine issue

1

for trial exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). This standard places the initial burden on the moving party to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (citations omitted). Once the moving party has met this burden of production, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(c). In deciding whether summary judgment is appropriate, the Court accepts the nonmoving party's evidence as true, and draw all inferences in that party's favor. *See Anderson*, 477 U.S. at 255; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999).

Before proceeding, the Court must resolve Defendants' motion to strike certain paragraphs from Graham's response to their statement of facts. To say the least, both parties' presentation of the "undisputed" facts are not only sloppy, but also replete with argument, making significantly more onerous the Court's task in sifting through the supposedly undisputed facts. "A lawsuit is not a game of hunt the peanut." *Greer v. Board of Educ. of City of Chi.*, 267 F.3d 723, 727 (7th Cir. 2001). Local Rule 56.1 statements that are full of argument, evasion, and improper denials defeat the point of Local Rule 56.1, which is to identify precisely which facts are actually in dispute. *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 528 (7th 2000); *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995).

Local Rule 56.1 sets forth the requirements for supporting and opposing motions for summary judgment. Among other things, the nonmovant must file a statement of facts that must

2

contain, "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials replied upon." L.R. 56.1(b)(3)(A). In addition, the nonmoving party shall file its own statement of any additional facts that require the denial of summary judgment. L.R. 56.1(b)(3)(B). Defendants move to strike many paragraphs of Graham's 56.1(b)(3)(A) statement, arguing that Graham failed to identify the parts of the record that deny, refute or rebut the Defendants' statements. Many of Defendants' objections, however, lack support. For example, Defendants move to strike Graham's response to paragraph A-3, in which they assert that Officer Fragassi asked Graham for identification upon approaching Graham's truck. Graham denies the statement and points to several parts of his deposition in which he plainly states that the officers did not ask for his identification until after he was handcuffed and in the back of a squad car, thus directly refuting the statement offered by the Defendants. Defendants argue that if Graham "Desired to refute the fact statement contained in Paragraph A-3, [he] could have readily presented the court with his opposing affidavit." But Graham need not present his facts in a form acceptable to the Defendants. He need only offer evidence of a type admissible at trial, and his deposition testimony more than suffices. *Smith v. City of Chicago*, 242 F.3d 737, 741 (7th Cir.2001); Fed. R. Civ. P. 56(e). Defendants also suggest that in his deposition Graham testified that he could not recall whether he gave Fragassi any type of identification and point the Court to pages 112 and 113 of Graham's deposition. Despite Defendants' claim that those pages are "attached hereto" their motion to strike, the record contains neither page 112 nor page 113 of Graham's deposition—they are not attached to the motion to strike, they are not appended to any of Defendants' 56.1 statements, nor are they included with any of Plaintiff's 56.1 statements. In the end, most of Defendants' objections

3

are merely varying interpretations of the facts, and thus except as discussed below the Defendants' motion is denied.

At the same time, some of Defendants' objections are valid. For example, Defendant argues that Plaintiff fails to properly refute Defendants' statement in Paragraph A-12, concerning photographs found in a gym bag in Graham's truck. Plaintiff denies the statement (though misnumbers it as paragraph A-11 because Defendants failed to include a Paragraph numbered A-8), citing to page fifteen of his deposition. Plaintiff, however, failed to include page fifteen of his deposition. In response to Paragraph A-12, Plaintiff also directs the Court to the deposition of Wesley Gibson, who states that the police told him they found videotapes in the gym bag— but that does not refute the Defendants' statement that they found photographs in the gym bag. Similarly, in Paragraphs A-16 and B-12, Defendants state that Officers Fragassi and Nallen never removed the videotape from Plaintiff's camera. Plaintiff's response—that Officer Fragassi picked up the camera, walked away, and eventually placed it in Officer Nallen's squad car and that the videotape was not in the camera when he looked for it one week later—does not refute the Defendants' statement. The Court strikes Paragraphs A-1, A-11, A-15, B-2, B-9, and B-12 of Plaintiff's Rule 56.1(b)(3)(A) response to Defendants' statement of facts, and thus paragraphs A-1, A-12, A-16, B-2, B-9, and B-12 of Defendants' statement are admitted.

II. Factual Background

Rodger Graham patrolled multiple W.W. Grainger, Inc., worksites in Niles, Illinois, as an Initial Security guard. (Defs.' L.R. 56.1(a) Statement of Material Facts (Defs.' Statement) ¶ C-1; Pl.'s L.R. 56.1(b) Response to Defs.' Statement of Material Facts (Pl.'s Response) ¶ C-1). On the evening of March 29, 2002, Graham worked a shift from 3:00 p.m. to 11:00 p.m., during which he

4

drove a red, Dodge, Grainger security truck and patrolled two Grainger worksites in Niles. *Id.* At approximately 8:00 p.m., Graham drove from one worksite to the other, and stopped in the parking lot of a Target Store on Touhy Avenue in Niles to take a break. (Defs.' Statement ¶ C-2; Pl.'s Response ¶ C-2). Graham occasionally stopped at Target during his "downtime" between assignments. (Pl.'s L.R. 56.1(b)(3)(B) Statement of Additional Facts (Pl.'s Statement) ¶ 2). Graham reported that he did some paperwork, bought a soft drink, and then began experimenting with his new video camera and its zoom function while sitting in the driver's seat of his truck parked near the store entrance. (Pl.'s Statement ¶ 4). At approximately 8:12 pm, the Village of Niles Police Department dispatch alerted its officers that a female caller had complained that an African American male in a red Grainger truck was videotaping women entering and leaving the Target at which Graham had parked. (Defs.' Statement ¶ A-1). Officer Fragassi responded to the dispatch and pulled up behind Graham's truck, using the squad car's emergency lights. (Defs.' Statement ¶ A-2; Pl.'s Response ¶ A-2). Officer Nallen also responded to the dispatch and arrived shortly after. (Defs.' Statement ¶ B-2).

The parties dispute what happened next, but of course, the Court must present the facts in the light most favorable to Graham, the non-moving party. According to Graham, Officer Fragassi, without first asking for identification, asked Graham what he was doing. (Pl.'s Statement ¶¶ 9-11). When Graham responded that he was not doing anything, Officer Fragassi stated that the officers had received a complaint about a man videotaping in the target parking lot. *Id.* Graham admitted that he had been sitting in the front seat of his employer's security truck, experimenting with the functions of his new video camera in close proximity to the Target entrance, but insisted that the camera was not recording. (Pl.'s Statement ¶ 10).

5

According to Graham, in the next ten to fifteen minutes, both Officers Fragassi and Nallen questioned him about his activity with the video camera. (Pl.'s Statement ¶¶ 11-12, 21). Graham contends that the officers told him that it was illegal to videotape people in public. (Pl.'s Statement ¶ 9). At some point during the conversation between the officers and Graham, Officer Fragassi retrieved the video camera from the seat of his car and viewed the contents of the tape that was contained within it. (Pl.'s Statement ¶ 15, Defs.' Statement ¶ A-11). Officer Fragassi filed an affidavit stating that when he viewed the video tape, he saw images of three women going in and out of the target store, "with the images zooming in on each woman's torso area, to the chest." (Defs.' Statement ¶ A-11). Graham refutes Officer Fragassi's claim only by stating that he did not take any footage from the Target parking lot, (Pl.'s Response ¶ A-10).[1] But Graham admits that he never viewed the video tape "to see what was, in fact, on the video tape," (Defs.' Statement ¶ C-17; Pl.'s Response ¶ C-17; Pl.'s Statement App. A (Graham Dep.) at 67). After viewing the tape, Officer Fragassi then entered the store and spoke to the Target security officer regarding whether Target would sign a complaint against Graham on behalf of Target customers. (Pl.'s St. ¶ 17). The Target representative declined to sign any complaint against Graham. *Id.* When he returned, Officer Fragassi informed Graham that the video tape contained footage focusing on women's breasts as they entered or left the Target. (Pl.'s Statement ¶ 18).

Upon conclusion of the conversation about the video tape, Graham states that the officers placed him, unhandcuffed, in the back seat of Officer Nallen's squad car. (Pl.'s Statement ¶ 21). While he was in the back of the car, Officer Fragassi informed Graham's supervisor at Grainger,

---

[1] Curiously Defendants did not move to strike this paragraph, which clearly does not refute the Defendants' claim regarding what Officer Fragassi saw.

Wesley Gibson, that Graham would be arrested and that someone needed to retrieve the Grainger truck that Graham had been using from the Target parking lot. (Pl.'s Statement ¶ 20). Meanwhile, Officer Fragassi then searched an open gym bag in the front seat of Graham's truck and discovered a men's magazine that contained pictures of naked women. (Defs.' Statement ¶ A-12). While the officers waited for Gibson to retrieve the Grainger truck, they removed Graham from the squad car and, according to Graham, handcuffed him and returned him to the back seat of the squad car without patting him down to check for weapons or asking for identification. (Pl.'s Statement ¶ 23). A few minutes later, Officer Nallen decided that the officers should check Graham's identification and, without removing him from the squad car, reached into Graham's hip pocket and took his wallet. (Pl.'s Statement ¶ 26). Graham testified in his deposition that he was not threatened or harmed in any way, but that he was "terrified" while in the back of the squad car. (Pl.'s Statement, App. A (Graham Dep.) at 102).

When Graham's supervisor, Gibson, arrived, the officers informed him that Graham was being arrested for videotaping women's breasts in the Target store's parking lot. (Pl.'s Statement ¶ 28). Gibson testified at his deposition that the officers offered to show him the video, but claimed that the video camera's battery was dead (Pl.'s Statement, App. D (Gibson Dep.) at 16). Gibson also testified that the officers mentioned they found other video tapes in Graham's gym bag. *Id.* Gibson, however, does not recall whether the officers told him that Graham was arrested because he was driving under a suspended license. (Pl.'s Statement, App. D (Gibson Dep.) at 48).

Shortly after Gibson retrieved the Grainger truck, Officer Nallen informed Graham that the officers had run a check on his license and that his license had been suspended. (Pl.'s Statement ¶ 31). Officer Nallen then transported Graham to the Niles police station in order to charge him with

disorderly conduct and driving under a suspended license. (Pl.'s Statement ¶ 32, Defs.' Statement ¶¶ B-9 & B-10). At the station, Nallen fingerprinted Graham, took Graham's phonograph, and completed paperwork for Graham's entry into the CRIS system. (Pl.'s Statement ¶ 33). Graham's belongings were with him at all times in the Niles police station and he took his video camera and belongings with him when he was released. (Defs.' Statement ¶ C-28, Pl.'s Resp. ¶ C-28).

At the Niles police station, Officer Nallen spoke via telephone with a Cook County Assistant State's Attorney and was informed that since neither she nor Officer Fragassi had actually witnessed Graham driving with a suspended license, they should not charge him with that offense. (Defs.' Statement ¶ B-9). In addition, Officer Nallen's supervisor, Commander Halley, instructed her to drop the disorderly conduct charge because the initial female caller did not leave her name or contact information. (Defs.' Statement ¶ B-10, Pl.'s Response ¶ B-10). Officer Nallen released Graham without pressing any charges at approximately 11:00pm. (Pl.'s Statement ¶ 39). The entire incident lasted approximately three hours. (Defs.' Statement ¶ C-33, Pl.'s Response ¶ C-33). One week after the incident, Graham discovered that the video tape from the camera was missing (Defs.' Statement ¶ C-30, Pl.'s Response ¶ C-30).

### III. ANALYSIS

Qualified immunity protects government actors performing discretionary functions from liability so long as they do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). To determine the availability of qualified immunity in a particular case the Court engages in a two-step inquiry. The initial, threshold question is whether the facts, taken in the light most favorable to the plaintiff, show that the official's conduct violated a constitutional right.

*Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001); *Beauchamp v. City of Noblesville,* 320 F.3d 733, 743-44 (7th Cir. 2003). If a constitutional right is violated, then the Court must determine if that right was clearly established at the time of the alleged violation. *Saucier*, 533 U.S. at 201; *Finsel v. Cruppenink*, 326 F.3d 903, 906 (7th Cir.2003). The relevant inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation that the officer confronted. *Saucier*, 533 U.S. at 202; *Payne v. Pauley*, 337 F.3d 767, 776 (7th Cir. 2003).

The actual existence of probable cause to arrest precludes a § 1983 suit for false arrest. *Ochana v. Flores*, 347 F.3d 266, 271 (7th Cir. 2003); *Biddle v. Martin*, 992 F.2d 673, 676 (7th Cir. 1993); *Juriss v. McGowan*, 957 F.2d 345, 349 n. 1 (7th Cir. 1992). A person arrested with probable cause can not cry false arrest, and thus can not establish that he has suffered a constitutional violation. *See Juriss*, 957 F.2d at 349 n. 1 (citing *Baker v. McCollan*, 443 U.S. 137, 140, 99 S. Ct. 2689, 2692-93, 61 L .Ed. 2d 433 (1979)). Accordingly, the Court turns first to Graham's claim that Officers Fragassi and Nallen lacked probable cause to arrest him and therefore violated his Fourth Amendment rights. In order to have probable cause for an arrest, the officers must reasonably have believed, in light of the facts and circumstances within their knowledge at the time of the arrest, that the suspected had committed or was committing an offense. *Payne*, 337 F.3d at 767.

The Defendant Officers argue that they had probable cause to arrest Graham for driving under a suspended license. According to the Defendants, Officer Fragassi asked for and received Graham's identification when he first approached Graham's vehicle and a subsequent investigation revealed that Graham's license had been suspended. The Defendants argue that Graham "<u>theorizes</u> that the officers did not learn of the Plaintiff's suspended driver's license until 'just before they left the scene

9

for the Niles Police Station,'" (emphasis in brief) and that Graham offers no evidence of any disputed fact. The Defendants repeatedly suggests that Graham "had two and a half months, since the time of filing of the Defendants' Motion for Summary Judgment, within which time to present the Court with an opposing affidavit." (Defs. Reply at 2).[2] But Graham need not match the Defendants "'witness for witness' or affidavit for affidavit, nor must [he] 'persuade the court that [his] case is convincing, [he] need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact.'" *Payne*, 337 F.3d at 771 (quoting *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994)). Graham points to portions of his deposition testimony where he plainly states that the officers did not check his identification until after he was handcuffed and placed in the back of Officer Nallen's squad car—placing in dispute the Officers'

---

[2] Defendants go so far as to suggest that Graham "testified at his deposition that he does not recall whether Officer Fragassi had asked him for his identification and that he does not remember giving Officer Fragassi his identification." (Defs. Reply at 2). But Defendants cite to no portion of the record to support this assertion, nor do any of the facts in their 56.1 statements identify the relevant portion of Graham's testimony. "A judge is the impartial umpire of legal battles, not a plaintiffs' attorney. He is [not] required to hunt down arguments [parties] keep camouflaged." *Williams v. Eastside Lumberyard and Supply Co., Inc.*, 190 F. Supp. 2d 1104, 1114 (N.D. Ill. 2001) (citing *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991) ("Judges are not like pigs, hunting for truffles buried in briefs.")). The Court shall not waste its time hunting through the record for evidentiary support for a party's argument where that party has failed to direct the Court to the appropriate portion of the record. Indeed, throughout their memoranda supporting their motion for summary judgment, the Defendants do not cite to the record even once, requiring the Court to match the assertions they make in their memoranda to their Rule 56.1 statements of fact. The Defendants' failure to cite to the record in their memoranda supporting their motion for summary judgment is sloppy, to say the least. *See, e.g., Allen v. Bake-Line Products, Inc.*, 98 C 1119, 2001 WL 1249054, *2 (N.D. Ill. Oct. 17, 2001) (criticizing party for making the court's task on summary judgment more difficult for failing to cite to the record); *Hoogwegt U.S., Inc. v. Schenker Int'l, Inc.*, 121 F. Supp. 2d 1228, 1231 n.1 (N.D. Ill. 2000) (same); *Howse v. Northwestern Memorial Hosp.*, 98 C 4488, 2000 WL 764952, *1 (N.D. Ill. Jun. 13, 2000) (same); *Fidelity & Deposit Co. of Maryland v. County of Lake*, 97 C 6276, 2000 WL 347770, *1 (N.D.Ill. Apr. 3, 2000) (same); *Overton v. City of Harvey*, 29 F. Supp. 2d 894, 905 (N.D. Ill. 1998) (refusing to consider facts in brief for which party provided no cites).

presentation of the sequence of events. (Pl.'s Statement ¶ 26). Thus, Defendants' statement that Graham "overlooks the fact that there is no evidentiary support in the record for this theory," is incorrect. (Defs. Reply at 2). Even though Graham's version of the facts is patently unbelievable—the suggestion that not one but two officers would fail to check the identification of a suspect, indeed fail to even perform a protective pat-down, before handcuffing said suspect strains all reasonable credibility— at this point in the litigation the Court does not engage in questions of credibility. *Payne*, 337 F.3d at 770; *but see Birch v. Kim*, 977 F. Supp. 926, 938 (N.D. Ill. 1997) (court would entertain motion for Rule 11 sanctions after litigation concluded if plaintiff's claims were based on false factual assertions). The sequence of events is in dispute, and in resolving this summary judgment motion, the Court must present those facts in the light most favorable to the Plaintiff—thus the Court must accept Plaintiff's assertion that his identification was not checked until after he was handcuffed and placed in the back seat of Officer Nallen's squad car. It goes without saying that the police cannot "shoot first and ask questions later." Similarly, any reasonable police officer would understand that he could not arrest a citizen for driving under a suspended license *before* learning that the citizen's license was suspended.

But Graham was also arrested for disorderly conduct. Curiously, the Defendants, though they state that Graham was arrested for both disorderly conduct and driving under a suspended license, never argue that they had probable cause to arrest Graham for disorderly conduct. Graham, however, has the burden of demonstrating that the officers lacked probable cause to arrest him. *See, e.g., Adickes v. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970); *Doe v. Heck*, 327 F.3d 492, 515 (7th Cir. 2003); *Sparing v. Village of Olympia Fields*, 266 F.3d 684, 688 (7th Cir. 2001) ("Although qualified immunity is an affirmative defense, the burden of defeating an

assertion of qualified immunity rests with the plaintiff."); *Guenther v. Holmgreen*, 738 F.2d 879, 888 (7th Cir. 1984) (plaintiff bears burden in § 1983 case of demonstrating arrest was without probable cause and that officer lacked a reasonable belief that arrest was made with probable cause). Graham cannot establish that his arrest for disorderly conduct was made without probable cause, and thus cannot demonstrate a constitutional violation.

In Illinois, a person commits disorderly conduct when he commits "any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace." 720 ILCS 5/26-1(a)(1). Illinois courts have summarized that disorderly conduct is conduct that "at least has the potential to disturb public order." *People v. Tingle*, 665 N.E. 2d 383, 389 (Ill. App. Ct. 1996); *see also People v. Hoffman*, 258 N.E. 2d 326 (Ill. App. Ct. 1970) (arrest for disorderly conduct sustained for man walking around in public with vulgarism printed on his forehead). And an arrest for disorderly conduct is justified when "the defendant directly bothers or harasses other people." *Id.* (citing *People v. Kolichman*, 578 N.E.2d 569 (1991); *In re. D.W.*, 502 N.E.2d 419 (1986)). The Illinois Supreme Court has held that disorderly conduct is "intended to guard against an invasion of the right of others not to be molested or harassed, either mentally or physically, without justification." *People v. Davis*, 413 N.E. 2d 413, 415 (Ill. 1980) (internal quotation omitted).

While videotaping in public in and of itself may not give police probable cause to arrest a person for disorderly conduct, *see Cooper v. City of Waukegan*, No. 86 C 7051, 1987 WL 10956 (N.D. Ill. Apr. 22, 1987), Illinois courts have sustained arrests for disorderly conduct where the videotaping was accompanied by other suspicious circumstances, *see People v. Blair*, 748 N.E. 2d 318 (Ill. App. Ct. 2001) (defendant arrested for disorderly conduct after videotaping children at a zoo). Here there are similar suspicious circumstances. The police were aware that a woman had

complained that someone matching Graham's description was videotaping women in a public parking lot after dark. Indeed, Graham *did* in fact alarm at least one citizen—the woman who called the police to report his suspicious activity. *See, e.g., People v. Hinton*, 360 N.E. 2d 451, 453 (Ill. App. Ct. 1977) (call to police that person was peering into apartment windows showed that suspect had in fact "disturbed and alarmed" the residents). Similarly, Illinois courts have held that unwelcome and offensive sexual remarks can support a disorderly conduct charge. *See People v. Allen*, 680 N.E.2d 795, 800 (Ill. App. Ct. 1997); *see also People v. Bailey*, 657 N.E. 2d 954 (Ill. 1995) (comparing stalking to disorderly conduct); *People v. Nakajima*, 691 N.E. 2d 153 (Ill. App. Ct. 1998) (prior to arrest for stalking, police informed man who harassed and frightened a woman in Best Buy parking lot had committed disorderly conduct based on woman's complaint); *People v. Bergeson*, 627 N.E.2d 408, 409 (Ill. App. Ct. 1994) (knowingly looking in a woman's window so as to disturb or alarm and provoke a breach of peace sufficient to charge suspect with disorderly conduct under 720 ILCS 5/26(a)(1)); *In Interest of P.S.*, 498 N.E.2d 325, 327 (Ill. App. Ct. 1986) (defendant committed offense of disorderly conduct by exposing himself in car wash so as to alarm others and provoke a breach of the peace).

Taken in the light most favorable to Graham, the undisputed facts show that: (1) Officers Fragassi and Nallen received a call that a African American male in a Grainger truck was video taping women's breasts at a Target store in Niles; (2) it was past sunset;[3] (3) Officers Fragassi and Nallen found Graham sitting in a Grainger truck in the Target store parking lot with a video camera; (4) Officers Fragassi and Nallen found Graham's answers to what he was doing to be evasive; (5)

---

[3] According to the United States Navel observatory, sunset occurred at 6:13 in Niles, Illinois, on Friday, March 29, 2002. http://aa.usno.navy.mil/data/docs/RS_OneYear.html.

13

Officer Fragassi viewed the contents of the tape on the video camera and found it to contain images zooming in on women's breasts as they entered and left the Target store.[4] Given that Illinois courts have found that probable cause to arrest on a disorderly conduct charge exists when a suspect videotapes in a public place with an illicit sexual purpose, *Blair*, 748 N.E. 2d 318, and that Illinois courts have found that probable cause to arrest on a disorderly conduct charge also exists where a suspect exhibits peeping-tom or stalking behavior, *Nakajima*, 691 N.E. 2d at 954, *Bergeson*, 627 N.E.2d at 409, *Hinton*, 360 N.E. 2d at 453, the Court finds that Graham's nighttime activity are more than sufficient to create probable cause for an arrest for disorderly conduct. The police knew that Graham had frightened at least one woman in the Target parking lot and they knew that he had been "messing around" with a video camera, exhibiting behavior similar to peeping-toms and stalkers. It matters not that Graham was never charged or released, for probable cause does not require the police officers to be certain that a crime was committed. *See Biddle v. Martin*, 992 F. 2d 673, 677 (7th Cir. 1993). Indeed, the prosecutor did not inform Officer Nallen that Graham had not violated the disorderly conduct statute, but that a conviction would be unlikely without the complaining witness, who had decided to remain anonymous. Moreover, even if the officers had been mistaken that Graham's behavior in the Target parking lot violated the disorderly conduct statute, that mistake was reasonable—and a reasonable mistake is sufficient to entitle an officer to

---

[4] Graham offers no facts to dispute Officer Fragassi's testimony—he did not view the tape with Officer Fragassi and he never viewed the tape after his arrest. Quite simply, Graham does not know what is on the tape, and he has not produced it as an exhibit. Graham intimates that the officers might have removed the tape. But he admits that he never saw any of the officers remove the tape from the camera and admits that the camera was never outside of his presence except when Officer Fragassi viewed the footage (Pl.'s Response ¶ 28, Pl.'s Statement ¶ 16). Moreover, he admits that he let the camera sit unattended in a bag in his closet for at least a week. (Pl.'s Response, ¶ 30). Graham has produced no facts that make it reasonable to infer that any officer removed the video tape from the camera without his permission.

qualified immunity. *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991); *Thompson v. Wagner*, 319 F.3d 931, 935 (7th Cir. 2003). Because the Officers had probable cause to arrest Graham for disorderly conduct, his § 1983 claim for false arrest and imprisonment must fail.

Graham also contends that the officers' search of his truck was an unlawful violation of his Fourth and Fourteenth Amendment rights. However, "a police officer who has made a lawful custodial arrest of an occupant of a vehicle may search the passenger compartment of the vehicle, including the contents of any containers found therein." *Smith v. City of Chicago*, No. 97 C 0763, 1999 WL 162811, at *3 (N.D. Ill. Mar. 9, 1999) (citing *New York v. Belton*, 453 U.S. 454, 460-61, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981)). Even a search of the glove compartment and any containers such as "luggage, boxes, bags, clothing, and the like" is permissible when a lawful custodial arrest has been made. *Belton*, 453 U.S. at 460 n. 4. As previously discussed, Officers Nallen and Fragassi had probable cause to arrest of Graham for disorderly conduct. This custodial arrest gave them authority to search the passenger area of his truck, including any containers therein. The Officers thus are entitled to qualified immunity for Graham's claim that their search of his truck was unconstitutional.

Although the Court denied the Village of Niles' motion to dismiss the federal claims against it because Graham had alleged in his complaint that a policy, custom or practice of the Village was responsible for his violation, he has come forward with no facts supporting this theory on summary judgment. *Monell v. New York City Dept. of Social Servs.* requires that a plaintiff seeking to impose liability upon a municipality must prove that the deprivation of federal rights was proximately caused by a municipal policy, custom or practice. 436 U.S. 658, 690-91, 98 S. Ct. 2018, 56 L. Ed. 2d 611;

*see also Ienco v. City of Chicago*, 286 F.3d 994, 998 (7th Cir. 2002). Graham has produced no such facts and his claims against the Village are therefore dismissed.

Finally, Graham raises several supplemental state law claims. The Defendants argue the merits of Graham's state law claims and urge the Court to grant summary judgment in their favor on these claims as well. However, federal courts are courts of limited jurisdiction and district courts should relinquish jurisdiction over any pendent state claims when all the federal claims are dismissed before trial. *Estate of Allen v. City of Rockford*, No. 02-1873, — F. 3d. —, 2003 WL 22724670 (7th Cir. Nov. 20, 2003); *Williamson v. Indiana Univ.*, 345 F.3d 459 (7th Cir. 2003); 28 U.S.C. § 1367(c)(3). Because the Court has granted summary judgment on Graham's two federal claims (false arrest and improper search), it declines to exercise supplemental jurisdiction over Graham's supplemental state law claims, which are dismissed without prejudice.

IV. Conclusion

Graham's suspicious, nighttime activity in the Target parking lot, which frightened at least one women, and gave Officers Nallen and Fragassi probable cause to arrest him for disorderly conduct. Consequently, the Officers also had probable cause to conduct a search incident to a custodial arrest of Graham's truck. Thus, the Court finds that Officers Nallen and Fragassi are entitled to qualified immunity and grants summary judgment in favor of all Defendants on Count I (Unlawful Search) and Count II (False Arrest). Those counts are dismissed with prejudice. Counts III-VII, which rest on alleged violations of state law, are dismissed without prejudice.

IT IS SO ORDERED.

12/15/03
Dated

The Honorable William J. Hibbler
United States District Court